O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BARRY ROSEN, | Case No. CV 12-658 CAS (FFMx) |
| Plaintiff, | |
| vs. | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| NETFRONTS, INC., ET AL., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Barry Rosen ("Rosen") filed the instant action in this Court on January 25, 2012. Plaintiff's complaint alleges two claims for copyright infringement. The gravamen of plaintiff's complaint is that defendant Stephen Pierson ("Pierson") has, through his website, attempted to sell four unauthorized prints of photographs taken by plaintiff ("the Photographs").[1] The Photographs portray actress Gena Lee Nolan, and at the time defendant was offering them for sale, they were purportedly autographed. The

---

[1] Rosen's complaint named Pierson and Netfronts, Inc. as defendants. Dkt. #1. On February 27, 2012, the claims against Netfronts, Inc. were dismissed with prejudice pursuant to a stipulation. Dkt. #14. Pierson is the sole remaining defendant.

Photographs were never sold, and the asking price for the Photographs never exceeded fifty dollars. Rosen is seeking attorney's fees, statutory damages, and an injunction.

On June 13, 2013 the Court held a bench trial. After considering the evidence and arguments presented at trial, the Court finds and concludes as follows.

## II.  FINDINGS OF FACT

1.  Plaintiff Rosen is a photographer, and has worked in this profession for several years. Rosen took the Photographs at issue in this case, and registered them with the Copyright Office in 2004.

2.  Defendant Pierson is in the business of selling entertainment memorabilia, including autographed pictures. For several years, Pierson operated a retail store in Los Angeles, California. Additionally, Pierson sold memorabilia by mail and through the Internet.

3.  At some point during the late 1990s, two men appeared in Pierson's store, and sold Pierson several prints, including the Photographs.

4.  After purchasing the Photographs, Pierson displayed them and offered them for sale through his store, through mail-order catalogs, and through the Internet. The dispute underlying this case arises out of Pierson's efforts to sell the Photographs, Rosen's efforts to stop Pierson from selling the Photographs, Pierson's eventual acquiescence to Rosen's demands, and Pierson's avowed efforts to remove his offers to sell the Photographs from the Internet. The facts revolve around several encounters during which Rosen demanded that Pierson cease his activities.

5.  The first such encounter occurred at some point in either the late 1990s or early 2000s, when Rosen appeared in Pierson's store. Upon seeing the Photographs, Rosen informed Pierson that he owned a copyright to the Photographs, and demanded that Pierson cease displaying the Photographs and offering them for sale. Pierson asked Rosen for proof establishing his ownership of a copyright in the Photographs. Rosen did not offer any proof, and left the store.

6. A second set of encounters occurred between 2001 – 2004, and involved Pierson's attempts to sell the Photographs through the Internet. On several occasions, Rosen issued notices, pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA"), demanding that the Photographs be removed from ebay.com and dejavugalleries.com ("Pierson's website"), the latter of which was operated by Pierson. In 2004, Pierson learned of one of the DMCA notices from Tony Romero ("Romero"), who was providing technical support to Pierson's business. In response to the DMCA notice, Pierson ceased displaying and offering the Photographs for sale through the Internet. Pierson was unsure whether or not he had a right to sell and display the Photographs, but decided to cease his activity because the Photographs were inexpensive items.

7. At some point in 2005, Pierson encountered technical problems with his website, and removed his business from the Internet. At this time, Rosen believed Pierson had ceased doing business.

8. Although Pierson ceased his efforts to sell the Photographs online in 2004, he had also displayed one of the Photographs in a mail-order catalog. Pierson did not remove the offers to sell this Photograph from the mail order catalogs at that time. Accordingly, one of the four Photographs was displayed and offered for sale through the catalog. The catalog continued to be published, even after Pierson discontinued his online business.[2]

9. Subsequently, in or around 2010, Pierson revived his online business, and hired Lin Daniel ("Daniel") to rebuild his website. When Daniel rebuilt the website, she used a "global replace" technique, which drew upon a database Pierson had created that included information regarding all or almost all of the merchandise he had for sale. Although Romero had removed the Photographs from Pierson's website, they had never

---

[2] It is unclear why Pierson did not remove the Photograph from the catalog, or whether he even knew that the Photograph was included in the catalog.

been removed from this database. Therefore, when the website was rebuilt, a consequence of the "global replace" was that the Photographs and offers to sell were again displayed on Pierson's website. Additionally, Pierson's new website included a digital version of the print catalog, which still contained a copy of one of the Photographs and a related offer to sell.

10. With the Photographs back online, the final set of encounters occurred. At some point in 2010, Rosen viewed the Photographs while conducting an Internet search. In response, Rosen issued new DMCA notices demanding that the Photographs be taken down, and demanding that the electronic version of the catalog also be taken down. Pierson learned of the DMCA notices, and directed Daniel to remove the Photographs from the website. Additionally, Pierson removed the copy of the Photograph from the electronic version of the catalog, and directed Daniel to replace the allegedly infringing catalog with the modified catalog.

11. In response to Pierson's request, Daniel stated that she would resolve the problem, and attempted to reprogram the website to ensure that the Photographs would not reappear. She did not, however, remove the Photographs from Pierson's database. Instead, she attempted to make the Photographs inaccessible by removing any links to the Photographs. She believed that actually removing the images from the database would have been excessively difficult and not necessary to remove the Photographs from the website.

12. Rosen was able to view the Photographs online despite Daniel's modification to the website, and on September 3, 2011, Rosen sent another DMCA notice demanding that the images be taken down.

13. Rosen filed the instant lawsuit on January 25, 2012, alleging that Pierson engaged in copyright infringement through the website. Subsequently, in response to the complaint and DMCA notice, Daniel took additional steps to ensure that the Photographs

///

would not reappear, and also removed them from the website's database. Since this lawsuit was filed, the Photographs have not reappeared on Pierson's website.

    14.    To the extent necessary, each of these findings of fact may be deemed to be a conclusion of law.

### III. CONCLUSIONS OF LAW

    1.    Rosen has asserted claims for copyright infringement arising out of Pierson's post-2010 display of the Photographs and attendant offers of sale.

    2.    A copyright infringement claim has two elements: (1) ownership of a valid copyright, and (2) violation of any of the exclusive rights of copyright owners. 17 U.S.C. § 501; Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Rosen owns a copyright in the Photographs, and by displaying the Photographs on the Internet along with offers to sell, Pierson violated Rosen's exclusive rights to reproduce and distribute the Photographs. 17 U.S.C. § 106. While, under some circumstances, the "first sale" doctrine allows purchasers of authorized individual copies of an image to sell any copies lawfully purchased, the doctrine is inapplicable here because Pierson presented no evidence that the prints he sold were authorized copies. 17 U.S.C. § 109(a); Apple, Inc. v. Psystar Corp., 658 F.3d 1150, 1155 (9th Cir. 2011). Moreover, while the defense of laches can, under some circumstances, provide a defense to copyright infringement, it is inapplicable here because the evidence shows that Rosen did not unreasonably delay in asserting his rights, but instead refrained from bringing a suit earlier because he believed Pierson had gone out of business. Danjaq LLC v. Sony Corp., 263 F.3d 942, 950 – 951 (9th Cir. 2001) ("To demonstrate laches, the defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself.").

    3.    Therefore, the Court finds that Pierson infringed Rosen's copyright in all four Photographs by posting the Photographs online along with offers to sell. The Court next considers what remedies are available to Rosen.

/ / /

5

    4.    Rosen seeks statutory damages, attorney's fees, and injunctive relief. 17 U.S.C. §§ 502, 504(c), 505. In response, Pierson argues that statutory damages are unavailable under the doctrine of continuing infringement, which bars a copyright plaintiff from seeking attorney's fees or statutory damages where the alleged acts of infringement commenced prior to the registration of the work. 17 U.S.C. § 412(2). Additionally, Pierson argues that even if the doctrine of continuing infringement does not apply, only minimal statutory damages should be awarded because he never intended to display or offer to sell the Photographs when he resume his online business in 2010.

    5.    Under the doctrine of continuing infringement, "the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 699 (9th Cir. 2008). Here, Pierson's infringement through the catalog commenced at least in 2001, and hence commenced prior to registration. Rosen therefore cannot pursue statutory damages arising out of the copying and offers of sale that occurred in connection with Pierson's catalog. Rosen can, however, pursue statutory damages arising out of the copying and offers of sale that occurred through Pierson's website. The doctrine of continuing infringement does not apply to these acts because Pierson ceased displaying the Photographs through his website between 2005 – 2010, and this cessation of infringing activity renders the defense of continuing infringement inapplicable to the claims arising out of the website. Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158 – 159 (2d. Cir. 2007); Mason v. Montgomery Data, Inc., 741 F. Supp. 1282, 1286 (S.D. Tex. 1990); Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 535 (E.D. N.Y. 1988).[3]

/ / /

---

[3] The infringement through the catalog is irrelevant to the analysis of whether continuous infringement occurred through Pierson's website, because those acts of infringement are not "of the same kind." Derek Andrew, Inc., 528 F.3d at 699.

6. Rosen may therefore be awarded statutory damages for infringement of each of the four Photographs. Statutory damages are awarded based on the number of works infringed, not the number of infringements that took place. Walt Disney Co. v. Powell, 897 F.2d 565, 569 (D.C. Cir. 1990). The standard amount of statutory damages is $750 – $30,000 per work, but if the infringement was "innocent," a court may award damages as low as $200. Id. §§ 504(c)(1) – (2). Infringement is innocent if the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright." Id. § 504(c)(2).

7. A defendant has the burden of proving innocent infringement, and to carry this burden, the defendant must show a good faith belief that no infringement occurred, and must also show that this belief was objectively reasonable. Childress v. Taylor, 798 F. Supp. 981, 994 (S.D. N.Y. 1992). In a typical innocent infringement defense, a party asserts its belief that no infringing act took place because either the infringed works were not copyrighted, or the acts did not constitute infringement. See, e.g., id.; D.C. Comics Inc. v. Mini Gift Shop, 912 F.2d 29, 32, 26 (2d Cir. 1990); Allen-Myland, Inc. v. International Business Machines Corp., 770 F. Supp. 1014, 1027 (E.D. Pa. 1991). Here, Pierson offers a slightly different version of the defense. Rather than attempting to argue that he was unaware that the Photographs were copyrighted, he argues that he was unaware that he had actually posted the Photographs online with offers to sell. Pierson's defense therefore does not contest his knowledge of whether the acts constituted infringement, but instead rests on his assertion that—at the time the infringement commenced—he had a reasonable belief that he was not engaging in the acts constituting infringement.

8. The Court finds that Pierson's infringement was innocent. The evidence at trial showed that Pierson did not personally handle technical duties regarding his website, but instead retained Romero and Daniel for this purpose. Moreover, Pierson consistently directed both Romero and Daniel to remove the Photographs from the

website upon learning of Rosen's complaints.  Therefore, Pierson never personally displayed the Photographs or offers to sell the Photographs on his website, nor did he direct Romero or Daniel to do so, which supports his contention that he never subjectively intended to engage in the infringing acts that took place.

9. Moreover, it was reasonable for Pierson to believe that by bringing his business back online in 2010, he would not engage in infringement of Rosen's copyrights.  Pierson had instructed Romero to remove the Photographs from the website in or around 2004, and thereby ceased infringing Rosen's copyrights through his website.  Accordingly, when he reestablished his online business in 2010, Pierson had no reason to believe that he would engage in infringing acts by reviving the website.  Nothing that occurred between 2005 – 2010 raised the possibility that Daniel's global replace would reintroduce the Photographs to the website.  Moreover, after learning that his website had, in fact, displayed the Photographs, Pierson immediately directed Daniel to modify the website.  While Daniel's modifications to the website did not successfully prevent the images from reappearing, the Court has no reason to doubt the reasonableness of Daniel's belief that her modifications to the website should have been sufficient to prevent further infringing acts, nor the reasonableness of Pierson's belief that Daniel could successfully prevent the Photographs from reappearing.  The Court therefore concludes that there are no additional steps a reasonable person in Pierson's position would have taken to insure that the Photographs would not reappear online.  Consequently, Pierson's infringement was the result of a reasonable mistake, and therefore Pierson's infringement was innocent.  Accordingly, given the innocent nature of the infringement, statutory damages in the amount of $800 are appropriate.

10. Additionally, because Pierson's infringement was innocent, Pierson has ceased any infringing conduct, and Pierson has made good faith attempts to avoid infringement, the Court finds that Rosen is not entitled to attorney's fees.  McCulloch v. Albert E. Price, Inc., 823 F.2d 316, 323 (9th Cir. 1987) ("Considerations which justify

the denial of fees may include . . . the defendant's status as innocent, rather than willful or knowing, infringer . . . the defendant's good faith attempt to avoid infringement."); <u>Warner Bros., Inc. v. Dae Rim Trading, Inc.</u>, 677 F. Supp. 740 (S.D. N.Y. 1988).[4]

11. Finally, an injunction preventing Pierson from displaying the Photographs or offering to sell the Photographs should issue. A permanent injunction is an appropriate remedy for copyright infringement if there is a threat of continuing violations and an injunction is a reasonable means of preventing future infringement. <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 520 (9th Cir. 1993); 17 U.S.C. § 502. Because inadvertent computer errors caused infringement to occur on at least two occasions since 2010, and there is a threat that similar errors could cause further infringement, the Court concludes that an injunction should issue to ensure that Pierson takes steps to prevent the kind of inadvertent computer errors discussed above from causing future infringement.

12. To the extent necessary, each of these conclusions of law may be deemed to be a finding of fact.

## III. CONCLUSION

Based on the above Findings of Fact and Conclusions of Law, the Court finds that Pierson is liable to Rosen for copyright infringement, and awards Rosen $800 statutory damages. Additionally, Pierson, along with any of his agents, servants, employees, affiliates, successors, or assigns, and any person or entity acting on their behalf or in

---

[4] An award of attorney's fees to Pierson is not warranted either—despite the fact that Pierson prevailed on the issue of innocent infringement—because Pierson did not prevail on the issue of liability, and Rosen's position regarding innocent infringement was not objectively unreasonable, particularly in light of the fact that multiple acts of infringement occurred. <u>Love v. Associated Newspapers, Ltd.</u>, 611 F.3d 601, 614 (9th Cir. 2010) ("In considering whether [to award fees pursuant to section 505], the court might consider (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.").

concert or participation with them, is hereby PERMANENTLY ENJOINED from copying, displaying, distributing, marketing, licensing, offering to license, selling, or offering to sell the Photographs or any prints of the Photographs. Each side is to bear its own costs and attorney's fees.

IT IS SO ORDERED.

Dated: July 9, 2013

_____
CHRISTINA A. SNYDER
United States District Judge